IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAVIER AVALOS, | ) | No. C 05-3830 MMC (PR) |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; DISMISSING EQUAL PROTECTION CLAIM; DENYING APPOINTMENT OF COUNSEL** |
| v. | ) | |
| JAMES W. NIELSEN, et al., | ) | |
| Defendants | ) | |
| _____ | ) | (Docket Nos. 12, 14, 18) |

On September 22, 2005, plaintiff, a California prisoner incarcerated at the California Training Facility ("CTF"), Soledad, and proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983 against officials of the California Board of Prison Terms and CTF. After reviewing the complaint, the Court found plaintiff had stated a cognizable claim against defendants for not granting his requests for a transfer to a prison in Mexico, his country of origin. Defendants have filed a joint motion for summary judgment. Plaintiff has filed an opposition and a cross-motion for summary judgment, to which defendants have not responded.[1]

## BACKGROUND[2]

In 1987, in Los Angeles County Superior Court, plaintiff, a citizen of Mexico, was

---

[1] It appears plaintiff failed to serve defendants with his opposition and cross-motion.

[2] The following facts are not disputed by the parties.

convicted of murder; he was sentenced to a term of 27 years to life in state prison. The California Board of Prison Terms ("BPT") set a Minimum Eligible Parole Date ("MEPD") of December 10, 2003. Between April 2005 and September 2005, plaintiff wrote letters to the BPT, requesting a transfer to a Mexican prison.[3]  His requests have been denied.[4]

## DISCUSSION

A.  Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, 477 U.S. at 248 (holding fact is material if it might affect outcome of suit under governing law; further holding dispute as to material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts

---

[3] Plaintiff's earlier requests for a foreign transfer were denied by the BPT in 1988, 1994, and 1996.

[4] In his complaint, plaintiff alleges his requests have not been answered. In their motion, defendants state, and plaintiff does not dispute, the transfer requests have since been denied.

showing that there is a genuine issue for trial.'" See Celotex, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)). At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party; if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).

B.   Claims

   1.   Liberty Interest Protected by Due Process

Plaintiff claims the denial of his requests for a transfer to a Mexican prison, pursuant to a treaty between the United States and Mexico, violates a liberty interest protected by due process. Pursuant to the Inter-American Convention on Serving Criminal Sentences Abroad (hereinafter "Convention"), citizens of Mexico convicted and serving prison terms in the United States may seek a transfer in order to serve their sentences in a Mexican prison.[5] See S. Treaty Doc. No. 104-35 (1995), 1995 WL 905075 (Mossler Decl. Ex. B.) With respect to persons convicted in state court, such as plaintiff, the Convention grants the state the authority to approve or deny the transfer:

> If the sentence was handed down by a state or province with criminal jurisdiction independent from that of the federal government, the approval of the authorities of that state or province shall be required for the application of this transfer procedure.

Id. at Art. V ¶ 3. In California, the Chairman of the BPT is given the authority to approve or deny requests for transfers to a foreign prison. See Cal. Govt. Code § 12012.1; 15 Cal. Code Regs. § 2870. In order to obtain a transfer in California, a prisoner must request that the foreign entity send a "letter of intent" to the Chairman of the BPT, setting forth its plans for the prisoner's incarceration and parole following such transfer. See 15 Cal. Code Regs. § 2870(a). Here, plaintiff has submitted no evidence indicating he ever requested such a letter

---

[5]In his complaint, plaintiff alleges he has a right to a transfer under the "California Foreign Prisoner Transfers Treaty." No treaty by such name has been located by the Court or respondent, and, in his opposition and cross-motion for summary judgment, plaintiff refers exclusively to the Convention.

3

from Mexican officials in conjunction with his 2005 transfer requests, and the requests themselves make no mention of any such letter having been requested. (See Complaint Ex. E.) Consequently, for this reason alone, plaintiff's liberty interest claim fails.

Moreover, even if plaintiff had obtained the necessary letter from Mexico, the denial of his transfer requests does not violate a constitutionally protected liberty interest. A deprivation imposed on an inmate amounts to the violation of a liberty interest protected by due process if the state government officials' power to impose the deprivation is "narrowly restricted," i.e., the inmate has a kind of right to avoid it, and the deprivation is one of "real substance." See Sandin v. Conner, 515 U.S. 472, at 477-87 (1995). A deprivation of "real substance" is a (1) restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," id. at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," id. at 487. Sandin requires a factual comparison between the conditions of a plaintiff's former status and those of his new status, with an examination of the hardship caused by the challenged action. Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003).

Here, there is no allegation, let alone evidence, suggesting the denial of plaintiff's transfer requests has resulted in his experiencing conditions any different from those experienced by other prisoners. Consequently, the denial of plaintiff's transfer has not caused "an atypical and significant hardship in relation to the ordinary incidents of prison life." See, e.g, Resnick v. Hayes, 213 F.3d 443, 447-48 (9th Cir. 2000) (finding placement in secured housing unit did not give rise to liberty interest because plaintiff failed to allege his conditions of confinement were materially different from those imposed on other inmates in administrative segregation or in general prison population). Further, there is no allegation or indication that the denials of transfer have had any effect on the duration of plaintiff's sentence. Accordingly, the denial of plaintiff's transfer requests does not amount to a deprivation of "real substance" within the meaning of Sandin.

Having determined that the deprivation at issue is not one of "real substance," the Court need not address the additional question of whether the power of California prison

4

officials to approve or deny plaintiff's transfer requests is "narrowly restricted." As the Supreme Court recently explained, "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" Wilkinson v. Austin, 125 S. Ct. 2384, 2394 (2005) (quoting Sandin, 515 U.S. at 484); see also Jackson, 353 F.3d at 755 (noting "focus of the liberty interest inquiry" is on whether condition constitutes atypical and significant hardship in relation to ordinary incidents of prison life); Neal v. Shimoda, 131 F.3d 818, 829 (9th Cir. 1997) (looking solely to whether deprivation suffered constituted atypical and significant hardship on inmate, rather than to statutory language). Consequently, for this additional reason as well, plaintiff's liberty interest claim fails.

Accordingly, defendants are entitled to summary judgment on this claim.

B.  Equal Protection

Plaintiff also claims the BPT is violating his rights under the Equal Protection Clause because it grants transfers to European countries more readily than to Mexico. Plaintiff argues such claimed differential treatment constitutes discrimination based on his national origin. As the Court did not address this claim in its Order of Service, defendants have not addressed it in their motion. The Court herein reviews the claim pursuant to 28 U.S.C. § 1915A, for purposes of determining whether it is cognizable or subject to dismissal. See 28 U.S.C. § 1915A(b)(1),(2).[6] As the complaint was filed pro se, it will be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457

---

[6] In conducting this review, the Court also has considered the arguments made in plaintiff's opposition and cross-motion, as well as the exhibits thereto, and, for the reasons expressed infra, finds such arguments unpersuasive.

U.S. 202, 216 (1982)). To state a claim under § 1983 for violation of the Equal Protection Clause, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Thornton v. City of St. Helens, 425 F.3d 1158, 1166-67 (9th Cir. 2005) (internal quotation and citation omitted). "Different treatment of unlike groups does not support an equal protection claim"; rather the groups "must be comprised of similarly situated persons." Id. at 1167-68 (finding petitioner failed to state equal protection claim because groups alleged to be receiving different treatment not "similarly situated").

Here, plaintiff fails to allege an equal protection claim because his complaint makes clear that prisoners seeking foreign transfers to Mexico are not "similarly situated" to those seeking transfers to a European country. To begin with, transfers of prisoners to Mexico are governed by a different treaty than transfers to European countries. Compare Inter-American Convention on Serving Criminal Sentences Abroad, S. Treaty Doc. No. 104-35 (1995), 1995 WL 905075 (Treaty) (governing transfers to Mexico) with Council of Europe: Convention on the Transfer of Sentenced Persons, 22 I.L.M. 530 (1983) (governing transfers to Europe). Moreover, as cited in plaintiff's complaint, the following statement by the BPT Chairman explains why transfers are granted more readily to European countries than to Mexico:[7]

> We want to have an indication of the receiving nation's intentions regarding incarceration. This has always been a sensitive issue and an important issue. That's why we are quicker to approve a transfer with the European Convention countries because they are more willing to give us those assurances than Mexico has been, and hence, it's a much easier decision to make because of a higher degree of assurance on how much time they're going to serve.

Complaint, Ex. B at 4. Indeed, one of the factors in deciding whether to approve a foreign transfer request is "the relevant law within the receiving nation for the criminal offense committed by the prisoner, including sentencing guidelines." See also 15 Cal. Code Regs. § 2870(b)(6). Based on the differing assurances from Mexico and from European countries regarding a prisoner's continued incarceration following transfer, the prisoners from these

---

[7]This statement is from a 1998 BPT hearing at which the BPT adopted regulations governing transfers of foreign prisoners. See Complaint, Ex. B.

countries stand in a different position with respect to the consequences of an approved transfer. As a result, as set forth in the complaint itself, the BPT's alleged granting of prisoner transfer applications to European countries more readily than to Mexico does not constitute discrimination violative of the Equal Protection Clause but rather "different treatment of unlike groups" of prisoners. Accordingly, plaintiff fails to state a cognizable claim for the violation of his equal protection rights.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED, and plaintiff's cross-motion for summary judgment is DENIED. Plaintiff's equal protection claim is DISMISSED for failure to state a cognizable claim for relief. Appointment of counsel is not warranted in this case and plaintiff's motion for such appointment is DENIED.

This order terminates Docket Nos. 12, 14, and 18.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED: September 29, 2006

MAXINE M. CHESNEY
United States District Judge